

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed February 9, 2010**                                            **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HERITAGE SOUTHWEST | § | CASE NO. 01-30212-BJH-7 |
| MEDICAL GROUP, P.A., | § | |
| | § | |
| Debtor. | § | |
| | § | |
| KENNETH KOLLMEYER, M.D., | § | |
| LAWRENCE ALTER, M.D., et al., | § | |
| | § | |
| Plaintiffs, | § | ADV. PRO. 04-3005-BJH |
| - against - | § | |
| | § | |
| AETNA LIFE INSURANCE CO., | § | |
| AETNA U.S. HEALTHCARE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion by Kenneth Kollmeyer, M.D. and Lawrence Alter, M.D., et al.

(the "Providers") styled as a "Motion to Reopen Administratively Closed Adversary Proceedings

**Memorandum Opinion and Order**

and Reurged Motion for Abstention and Remand" (the "Motion"). For the reasons set forth below, the Motion is granted.

## I. Factual Background

The lawsuit now known in this Court as Adv. Pro. No. 04-3005 (the "Adversary Proceeding") began in 2003 in Travis County, Texas. The Providers/plaintiffs are medical providers who sued Aetna Life Ins. Co. and several affiliates (collectively, "Aetna"), asserting several state-law claims based upon Aetna's failure to pay the Providers for healthcare services they had rendered to enrollees in an Aetna HMO. Under contract with the Health Care Financing Administration (HCFA), Aetna received funds from HCFA for Medicare benefits provided to eligible insureds. Aetna contracted with Heritage Southwest Medical Group, P.A. (the "Debtor") to act as a third party administrator to process claims and pay medical providers. When the Debtor failed to pay the Providers, the Providers sued Aetna, alleging (i) violations of the Texas Insurance Code, the Texas Theft Liability Act, and the Texas Business and Commerce Code, and (ii) various common law claims sounding in negligence, negligent misrepresentation, fraud, and quantum meruit.

Aetna both removed the lawsuit to the U.S. Bankruptcy Court for the Western District of Texas and sought its transfer to this Court; the Providers sought remand or abstention. Bankruptcy Judge Frank Monroe transferred the lawsuit to this Court, where the Debtor's bankruptcy case was and remains pending, so that this Court could rule on the motion for remand/abstention. The bankruptcy trustee in the Debtor's bankruptcy case had also filed similar litigation against Aetna in Travis County, which Aetna also removed and which was also transferred to this Court. *See* Adv.

Pro. No. 03-3972.[1] Thereafter, Aetna filed motions to dismiss both the trustee's lawsuit and the Adversary Proceeding for lack of subject matter jurisdiction. This Court, through the Hon. Steven A. Felsenthal, heard both those motions and the remand/abstention motions on March 12, 2004. With respect to the Providers' lawsuit, Aetna argued that the Providers' claims essentially seek reimbursement for Medicare benefits, and thus the Providers must exhaust their administrative remedies under Medicare before filing suit against Aetna. The Providers argued that because they are not seeking payment from the United States for Medicare benefits, but instead are seeking damages against Aetna under Texas statutory and common law, exhaustion of administrative remedies is not required.

On May 20, 2004, Judge Felsenthal entered an identical Memorandum Opinion and Order in each of the trustee's lawsuit and the Adversary Proceeding (the "Memorandum Opinion"). He noted that unless an exception applies, the administrative review process must be exhausted for claims arising under Medicare before suit may be commenced. He further noted that courts excuse parties from exhausting the administrative process if the claims are wholly collateral to a demand for benefits; exhaustion would be futile; or the claimant would suffer irreparable harm if required to exhaust administrative remedies, but that none of those circumstances was present and thus exhaustion was required. Judge Felsenthal further rejected the Providers' argument that the exhaustion requirement does not apply to proceedings under Part C of the Medicare Act, under which the Providers' claims arose. However, Judge Felsenthal declined to dismiss the Adversary Proceeding. Instead, he noted:

---

[1] The trustee's lawsuit was thereafter settled.

**Memorandum Opinion and Order** 3

In the underlying pending bankruptcy case, the trustee has a Congressionally-imposed duty to liquidate assets of the bankruptcy estate. 11 U.S.C. § 704(1). While the trustee may have to exhaust the administrative remedies to do so, dismissal of the trustee's complaint would be inappropriate. Judicial review of an adverse administrative determination would be in this district. The state law claims have already been alleged by the trustee in this adversary proceeding. Accordingly, rather than dismiss the trustee's complaint, the court will administratively close the trustee's adversary proceeding without prejudice to re-opening on motion and hearing.[2]

With respect to remand/abstention, Judge Felsenthal held:

As found above, the trustee and the providers must exhaust their administrative remedies. An adverse ruling by the Commissioner is reviewable only in district court. The trustee and the providers therefore cannot maintain their litigation in state court. Mandatory abstention does not apply. 28 U.S.C. § 1334(c)(2). Indeed, under 42 U.S.C. § 405(g), because the litigation must proceed in district court, discretionary abstention would likewise not apply. 28 U.S.C. § 1334(c)(1). If, however, the Commissioner holds that the administrative process does not apply to the trustee's and the providers' claims, the court would revisit discretionary abstention, weighing the various factors for the exercise of discretion.

The Court therefore denied the Providers' motion for remand/abstention without prejudice, and ordered the Adversary Proceeding administratively closed pending exhaustion of administrative remedies under Medicare.[3]

## II. Legal Analysis

### A. The Motion to Reopen

The Providers argue that after Judge Felsenthal's ruling, the law on Medicare exhaustion of remedies changed unequivocally and conclusively in their favor, such that claims like the Providers' claims have been held to fall outside the Medicare scheme and thus exhaustion of administrative

---

[2] On this point, the text of Judge Felsenthal's Memorandum Opinion and Order discusses only the trustee's lawsuit. However, the Court notes that the decretal paragraph of the order closed *both* lawsuits pending exhaustion of remedies. In fact, the Memorandum Opinion and Order bears the caption of both lawsuits, although they were never consolidated.

[3] The Providers moved for reconsideration in both lawsuits, but their motions were denied. The Adversary Proceeding was thereafter closed and remains so to date. As noted earlier, the trustee's lawsuit ultimately settled.

**Memorandum Opinion and Order** 4

remedies is not even possible, no less required. Therefore, the Providers seek to reopen the Adversary Proceeding so that their claims may be adjudicated on the merits.

Aetna does not dispute the Providers' assertions about the current state of the law. Instead, Aetna argues that under general legal principles, the Providers were required to act with due diligence in pursuing their claims, either by initiating the appropriate Medicare review, or by timely moving to reopen if those administrative procedures were shown to be inapplicable shortly after the issuance of the Memorandum Opinion.[4] Aetna argues that administrative closure does not effect an indefinite stay, and that even if a stay was appropriate pending exhaustion of administrative remedies, the Court should have placed "reasonable time limits" on the pursuit of administrative remedies. *Aetna's Resp. To Mot. To Administratively Closed Adv. Pro. And Reurged Mot. For Abstention and Remand*, p. 5. Aetna therefore suggests that the Court dismiss the Adversary Proceeding for failure to prosecute or comply with the Court's order.[5] Moreover, Aetna urges that the administrative closing of a case does not toll the statute of limitations until the case is reopened and at most, only tolls the statute of limitations until the administrative remedies are exhausted. Since the Providers have not availed themselves of any administrative remedies, Aetna argues that the Providers have slept on their rights and are now barred from re-commencing the prosecution of the Adversary Proceeding. Aetna further argues that the doctrine of equitable tolling applies only in rare circumstances - none of which are present here.

---

[4] One of the cases upon which the Providers rely for the proposition that administrative exhaustion is not required was decided in 2004.

[5] In fact, the Memorandum Opinion did *not* place any time restrictions on the Providers' exhaustion of remedies. While the Court does not disagree that such a provision may have been beneficial, and that the Providers have engaged in some delay, it would be manifestly inequitable to hold that a deadline did, in fact, exist by virtue of Judge Felsenthal's order, that the Providers violated that order, and thus dismissal of their claims with prejudice, as Aetna now seeks, is warranted.

**Memorandum Opinion and Order** 5

The Providers respond that Aetna improperly disregards the function and effect of the administrative closure of a case — which always serves as a stay and a method of docket control – and that Aetna impermissibly conflates three separate procedures: (i) removal of a case from a court's active docket through its administrative closing; (ii) dismissal without prejudice of a case on the active docket; and (iii) dismissal with prejudice for want of prosecution of a case on the active docket. The Providers argue that administratively closed proceedings do not raise issues of limitations, diligence or equitable tolling, because those proceedings have been *stayed*, not dismissed. Further, the Providers assert that they have not slept on their rights, because although the first case which chipped away at the doctrine of exhaustion of administrative remedies in Medicare Part C cases was decided in 2004, the most significant decision, by a Texas state court, was not handed down until late 2007. Lastly, the Providers argue that Aetna has not alleged any specific facts to establish prejudice to Aetna should the Adversary Proceeding be reopened.

The Court agrees with the Providers on all counts. First, Aetna does not dispute that the law has changed such that the Providers need not exhaust administrative remedies under Medicare prior to bringing their claims. Rather, Aetna argues that the Adversary Proceeding should not be reopened because the Providers have waited too long. Apparently, Aetna would prefer to see the Adversary Proceeding remain in permanent limbo. However, denying the Motion would be tantamount to depriving the Providers of an adjudication of the merits of their claims in any forum, ever.

Nor is dismissal of the Adversary Proceeding for want of prosecution warranted. The cases upon which Aetna relies all involve cases languishing on a court's active docket. None involve a case administratively closed pending exhaustion of administrative remedies which, almost by definition, contemplates an extended period of inactivity. *American Heritage Life Ins. Co. v. Orr*, 294 F.3d

702, 715 (5th Cir. 2002)(Dennis, J. concurring) (noting that retention of jurisdiction pending arbitration contemplates that an action is likely to remain dormant for an appreciable period of time). As the Fifth Circuit has noted, administrative closure is a procedural device used "to remove from [a court's] pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.*, administratively closed cases are not counted as active." *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 166 (5th Cir. 2004).

Aetna also argues that the statute of limitations now bars the claims. First, the Court notes that if Aetna is correct that it is not appropriate to reopen the Adversary Proceeding to consider the merits of the Providers' claims, then it is also not appropriate to consider the merits of Aetna's affirmative defenses, either – such as the statute of limitations. Nevertheless, the Court agrees with the Providers that the statute of limitations proves no bar to the assertion of claims which were timely filed before the statute of limitations expired, and the administrative closure of the case does not change that result.[6] *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002)(Dennis, J. concurring) ("[A]dministrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance."). Aetna relies on the unreported decision in *Walsh Securities, Inc. v. Cristo Property Mgt., Ltd.*, No. 9703496 (WGB),

---

[6] The Court invited further briefing on this point. In response, Aetna cites to *Kobleur v. Group Hospitalization & Med. Servs.,*, 954 F.2d 705 (11th Cir. 1992). In *Koebleur*, the Eleventh Circuit stated that administrative closure is no different than dismissal of a case without prejudice. However, the issue in *Koebleur* was whether an order administratively closing a case but retaining jurisdiction, pending exhaustion of remedies, was a final, appealable order. The Eleventh Circuit held that it was. Thus, it appears that either side could have appealed Judge Felsenthal's ruling. Neither did, however. The Court is at a loss to see how that fact means that dismissal is now appropriate or that the statute of limitations on the underlying claims has now run.

**Memorandum Opinion and Order**                                                                                                 7

2006 WL 166491 (D.N.J. Jan. 23, 2006). However, the *Walsh* case is inapposite. There, a plaintiff in a pending action which had been administratively closed,[7] after the vacatur of the administrative closure, filed an amended complaint which, for the first time, asserted claims against a defendant which had not previously been a party to the action, and the claims were asserted after the statute of limitations had run. The plaintiff argued that the administrative closure tolled the statute of limitations, but the district court disagreed, noting that nothing had prevented the plaintiff from restoring the action to the active docket for the limited purpose of asserting a claim against the non-party to prevent the statute of limitations from running. As the claims in the present case were originally asserted within the statute of limitations, but the claims in the *Walsh* case were not, the *Walsh* case is clearly distinguishable. Limitations issues are not raised where a case has been stayed or administratively closed after the timely filing of claims. *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) ("The statute of limitations is not a concern where the deferring court has issued a stay — the action is simply reactivated, if necessary, after the administrative proceeding runs its course. . . . But where the action has been dismissed without prejudice, a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice.").

Since the statute of limitations is not implicated by the present case, the Court need not address the parties' arguments regarding the doctrine of equitable tolling, other than to note that the doctrine is irrelevant on the facts of the present case.

---

[7] The district court in the *Walsh* case refers to its order removing the case from its active docket as an order "administratively terminating" the case in some places, as an "administrative stay" in some places, and as an "administrative dismissal" in yet other places. Regardless of the nomenclature used, it appears that the *Walsh* court did just what Judge Felsenthal did – entered an order removing the case from its active docket pending litigation in another forum (here, an administrative forum – in *Walsh*, in a criminal forum).

**Memorandum Opinion and Order**  8

For all of these reasons, that portion of the Motion that seeks to reopen the Adversary Proceeding is granted.

### B. The Motion for Abstention/Remand

As the Providers note, Judge Felsenthal concluded that the Providers' claims are "core" claims, and thus the doctrine of mandatory abstention does not apply. Citing no statutory authority, the Providers first ask this Court to revisit, and reverse, that ruling. The Court declines to do so. It is law of the case, and the Providers have not formally sought relief under Rule 60 of the Federal Rules of Civil Procedure.[8] Moreover, the Court notes that jurisdiction is generally determined at the time of removal, not in light of facts existing six years later. *In re Enron Corp. Securities*, 535 F.3d 325 (5th Cir. 2008). Accordingly, the doctrine of mandatory abstention does not apply.

The Providers also seek discretionary abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. §1452(b).[9] Because the statutes are similar in purposes, "the circumstances which weigh in favor of discretionary abstention . . . weigh in favor of or constrain remand under § 1452(b)." *Gehan Properties II, Ltd. v. Integrated Performance Sys., Inc. (In re Performance Interconnect Corp.)*, No. 07-3100, 2007 WL 2088281 at *5 (Bankr. N.D. Tex. July 19, 2007). Courts typically consider and balance the following factors in deciding whether to abstain and/or remand:

> (1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of

---

[8] The Court expresses no view as to whether such a motion, filed nearly six years after the Memorandum Opinion was issued, would be timely.

[9] Aetna argues that the request for remand or abstention is moot because the claims are time-barred. The Court disagrees, as it has previously rejected the notion that the statute of limitations bars the Providers' claims.

**Memorandum Opinion and Order** 9

>relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*Id*; *see also Browning v. Navarro*, 743 F.2d 1069, 1077 n. 21 (5th Cir. 1984) (analyzing the predecessor to §1452); *Horton v. Nacogdoches Indep. Sch. Dist.*, 81 F.Supp. 2d 707, 711 (E.D. Tex. 2000).

Here, factors (3), (4), (7), (10), (13) and (14) are either neutral or do not apply. Each of the other factors, however, weighs in favor of remand. First, there is no basis for bankruptcy jurisdiction other than under § 1334. The lawsuit involves only non-debtors and only state law claims. The Providers' claims are, at this point, quite remote from the estate. Remand will not cause a duplication of effort, because the similar litigation by the trustee settled long ago. The Court notes that the Providers have requested a jury trial. Assuming a jury trial right exists, absent consent by all parties, this Court is unable to accommodate that request, and the district court would need to withdraw the reference of the Adversary Proceeding to conduct a jury trial, resulting in further delay. Remand will ease the burden on the Court's docket. The Court has seen a tremendous increase in bankruptcy filings in the current depressed economic climate, and bankruptcy court resources across the nation are strained. Remand will ensure that the Court's resources are available for use in litigation which will have an impact on active, pending bankruptcy cases. Remand will not impact the estate in any way – in fact, it will expedite closure of the bankruptcy case. A review of the docket shows that the trustee filed his Final Report on October 16, 2009, certifying that "all scheduled and

**Memorandum Opinion and Order**  10

known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554 . . . all claims of each class which will receive a distribution have been examined and any objections to the allowance of claims have been resolved." *See* Docket No. 1907 in Case No. 01-30212-BJH-7. The bankruptcy case is, but for the pendency of the Adversary Proceeding, ready to be closed.

On balance, consideration of the relevant factors leads to the inexorable conclusion that remand is appropriate.

Therefore, the portion of the Motion that seeks equitable remand is granted, without prejudice to Aetna's assertion of whatever affirmative defenses it deems appropriate in state court.

.            # # # END OF MEMORANDUM OPINION AND ORDER # # #